## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02769-SKC-MDB

J.R., a minor, by and through his mother and general guardian EDEN HOPE RODRIGUEZ,

      Plaintiff,

v.

HARRISON SCHOOL DISTRICT TWO;
WENDY BIRHANZEL, Superintendent, Harrison School District Two, in her official and personal capacities;
MIKE CLAUDIO, Assistant Superintendent of Personnel Support Services, Harrison School District Two, in his official and personal capacities;
CHEYENNE MOUNTAIN CHARTER ACADEMY, d/b/a THE VANGUARD SCHOOL;
RENEE HENSLEE, Executive Director, The Vanguard School, in her official and personal capacities;
JEFF YOCUM, Director of Operations, The Vanguard School, in his official and personal capacities; and
BETH DANJUMA, Assistant Principal, The Vanguard School, in her official and personal capacities;

      Defendants.

_____

## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) and FED. R. CIV. P. 12(b)(6)

_____

Defendants, Harrison School District Two (the "School District") and its employees named in their individual and official capacities, Dr. Wendy Birhanzel and Dr. Mike Claudio (collectively referenced as the "Individual Defendants"), through undersigned counsel, move the Court to dismiss Plaintiff's First Amended Complaint (ECF 43) pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), and in

support thereof, state as follows:

## CERTIFICATE OF CONFERRAL AND USE OF ARTIFICIAL INTELLIGENCE (AI) FOR DRAFTING

Pursuant to SKC Civ. Practice Standard 7.1B(b), undersigned counsel certify that they initially conferred with Plaintiff's counsel on December 21, 2023 regarding various curable defects within Plaintiff's Complaint. In response, Plaintiff amended his complaint on January 11, 2024. Undersigned counsel again conferred with Plaintiff on January 30, 2024. In response, Plaintiff's counsel declined to amend the First Amended Complaint.

Pursuant to SKC's Standing Order For Civil Cases, undersigned hereby certifies that no portion of this filing was drafted by AI.

## LEGAL STANDARDS

### a)     Fed. R. Civ. P. 12(b)(1)

A motion filed pursuant to Fed. R. Civ. P. 12(b)(1) allows the Court to dismiss any part of a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1).[1] Although not a judgment on the merits of Plaintiff's claim(s), a Rule 12(b)(1) motion requires that the Court decide whether it has authority to adjudicate a matter based on the moving party's assertion that the Court lacks subject matter

---

[1] A moving party's contention that a claim is moot implicates the Court's subject matter jurisdiction. *Front Range Equine Rescue v. Vilsack*, 782 F.3d 565, 568 (10th Cir. 2015). Subject matter jurisdiction is also implicated when the movant asserts a party lacks standing. *Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1224-25 (10th Cir. 2012)

jurisdiction. *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). The burden of establishing subject matter jurisdiction lies on the party asserting claim(s) against another. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir.1974).

A motion to dismiss for lack of subject matter jurisdiction may take two forms: a facial or factual attack. A facial attack questions the sufficiency of the complaint. When reviewing facial attacks for lack of subject matter jurisdiction, the court must accept as true the allegations within the complaint "without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir.1971); *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). In a factual attack, the moving party challenges the allegations upon which subject matter jurisdiction depends; therefore, the movant may go beyond the allegations contained in the complaint and challenge jurisdictional facts. *Holt*, 46 F.3d at 1002. When reviewing factual attacks, the court need not accept as true the allegations contained within the complaint. Instead, the court makes its own factual findings, and it may permit affidavits and other documents to resolve disputed jurisdictional facts. *Id.*

### b) Fed. R. Civ. P. 12(b)(6)

A court must dismiss a claim under Rule 12(b)(6) where, as here, a plaintiff fails "to state a claim upon which relief can be granted." Courts must presume that all alleged facts are true and construe them in a light favorable to plaintiff. *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991). A complaint must contain factual allegations that, if accepted as true, state a plausible claim for relief. *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). A pleading that offers labels and conclusions, formulaic recitations of the elements, or naked assertions devoid of factual specificity is not plausible on its face. *Id.* Allegations must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In Section 1983 litigation, the complaint must "make clear exactly *who* is alleged to have done *what* to *whom*." *Kan. Penn Gaming, L.L.C. v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (emphases in original).

## RELEVANT ALLEGATIONS

Cheyenne Mountain Charter Academy d/b/a The Vanguard School ("Vanguard") is a charter school pursuant to contract with the School District. (Amend. Compl., ECF 43 ¶¶ 14; 18; Mov.'s App'x at 1-22, Charter Contract.)[2] Vanguard is a distinct legal entity from the School District, and it is incorporated as non-profit corporation with the State of Colorado. (*Id.* at 1, Preamble; 8-9, § 10.1(a).) Vanguard is governed by its own Board of Directors in accordance with its bylaws and articles of incorporation. (*Id.* at 9; § 10.1(c)-(d).) Among other powers, Vanguard is solely responsible for its personnel. (*Id.* at § 10.3(b)); *see also* C.R.S. § 22-30.5-104(7)(a). Vanguard employees are not School District employees, and the School

---

[2] When ruling on a motion to dismiss, a court is permitted to review the complaint, its attachments, and documents incorporated into the complaint by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). A court may also "take judicial notice of its own files and records, as well as facts which are a matter of public record." *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by* 248 F.3d 946, 955 (10th Cir. 2001).

District has no responsibility for Vanguard employees. (*Id.*; *id.*, 9, §§ 10.2; 10.3(b)(3); *see also* 1 CCR 301-35, 2217-R-3.01 (listing automatic waivers provided to charter schools concerning personnel upon charter school entering a contract with its authorizer).) Vanguard also has "the power and authority to *independently exercise*" the operation of the charter school in accordance with all applicable School District policies "unless a specific waiver is obtained." (*Id.,* 9-10, § 10.3(b)(8) (emphasis added).) Here, Vanguard sought and received a waiver exempting it from complying with District Policy JICA*, i.e.* the District's dress code. (*Id.*, 18-19, Waivers; *see also* C.R.S. § 22-30.5-104(6)(a) (providing statutory authority for school districts to contractually waive school district policies "without seeking approval of the state board").) Pursuant to the charter contract, Vanguard had independent authority to develop its own dress code and disciplinary policies. (*Id.* at 2; § 3.2.)

Plaintiff was enrolled and has attended school at Vanguard since the 2021-2022 school year. (ECF 43 ¶¶ 14; 76.) At the beginning of his seventh-grade year, the 2023-24 school year, Plaintiff wore a backpack at Vanguard displaying approximately a dozen patches. (*Id.* ¶¶ 61-62.) Most contained images or referenced firearms and/or alcohol. (*Id.*) Plaintiff wore the same dozen or so patches for the previous two school years since he began attending school at Vanguard. (*Id.* ¶ 76.)

After two years of the same or similar expression through his patches, on or about August 18, 2023, Vanguard's Assistant Principal, Defendant Beth Danjuma, called Plaintiff to her office and informed him that she received a complaint

concerning his patches. (*Id* ¶¶ 21; 84.) In response, Plaintiff decided to remove some patches but retain others. (*Id*. ¶ 85.) On August 21, 2023, Vanguard's Director of Operations, Defendant Jeff Yocum, informed Plaintiff that one of his patches referencing firearms was not allowed at school because Vanguard implemented the School District's dress code policy, *i.e.* Policy JICA, which banned accessories or images referring to "drugs, tobacco, alcohol, or weapons." (*Id*. ¶¶ 20; 86; ECF 43-2.) On August 23, 2023, Mr. Yocum emailed Plaintiff's mother stating that after consulting with Vanguard's attorney and the School District, Mr. Yocum provided a list of five patches that were permitted to remain on Plaintiff's backpack. (*Id*. at 61(f); 90; ECF 43-5.) Plaintiff did not comply and returned to school. (*Id*. ¶ 93.) On August 25, 2023, Vanguard's Executive Director, Defendant Renee Henslee, emailed Plaintiff's mother noting that Plaintiff continued to wear two patches at Vanguard that were previously deemed unacceptable per Mr. Yocum's prior correspondence. (ECF 43-6; *see also* ECF 43 ¶ 94.) Ms. Henslee stated that if Plaintiff did not comply, he would be sent to Vanguard's front office until he did. (*Id*.)

Plaintiff complied with his Vanguard administrators' requests and removed the patches originally requested by Mr. Yocum. Plaintiff, however, decided to display other patches on his backpack including a patch showing the Gadsden flag. (ECF 43 ¶¶ 63-64; 95-97.) On August 28, 2023, Ms. Danjuma met with Plaintiff and his mother concerning the Gadsden flag patch. The meeting was surreptitiously recorded on video by Plaintiff and/or his mother. (ECF 98-99; ECF 43-7.) At this meeting, Ms.

Danjuma informed Plaintiff that Vanguard would not permit Plaintiff to display the Gadsden flag patch. (ECF 43 ¶¶ 98; 102; 106; ECF 43-7.) Thereafter, Mr. Yocum sent a follow-up email to Plaintiff's mother providing links to news articles justifying the decision. (*Id*.) Mr. Yocum stated that he had been "coordinating" Vanguard's response with the School District's Assistant Superintendent Mike Claudio. (ECF 43 ¶¶ 108; 118; 43-8, pp. 1-2.) Following media coverage concerning Ms. Danjuma's August 28th meeting with Plaintiff, Vanguard, by and through its Board of Directors, issued a public statement on August 29th retracting the administration's action and specifically permitting Plaintiff to wear the Gadsden patch. (ECF 43 ¶¶ 133-35; 137; 43-11.)

Since August of 2023, Plaintiff returned to Vanguard displaying the Gadsden patch and other previously banned patches on his backpack without disciplinary repercussions and continues to do so. (*Id*. ¶¶ 60; 143-44; *see also* ECF 26 ¶ 8.)

After Plaintiff initiated this lawsuit and served the School District defendants on November 8, 2023, the School District's Executive Leadership Team met to conduct its regularly assigned duties on December 11, 2023. (Mov.'s App'x at 25-30, ¶ 5, Birhanzel Affidavit.) During this meeting, the Executive Leadership Team reviewed District Policy JICA for possible revisions.[3] (*Id*.) On December 19, 2023, the

---

[3] The School District Defendants submit the facts contained in this paragraph for their Rule 12(b)(1) factual attack on subject matter jurisdiction. *See infra* pp. 20-25. The School District Defendants do not rely on this additional evidence for their Rule 12(b)(6) motion. *See infra* pp. 9-19.

School District published its revised Student Dress Code policy, Policy JICA, and removed its dress code ban on articles of clothing, paraphernalia, etc. that refer to weapons. (*Compare* Appx. at 23-24, District Policy JICA, amended Dec. 19, 2023; 25-30, ¶ 5 *with* ECF 43-2, District Policy JICA, prior version.) The School District does not intend to reenact such ban. (Mov.'s App'x at 25-30, ¶ 6. Birhanzel Affidavit.) In addition, there is no specific ban on the display of the Gadsden flag pursuant to District Policy JICA. (*Compare* Appx. at 25-30, ¶ 7 *with* 43-2.) District students are allowed to display the Gadsden flag to the extent schools adopt District Policy JICA so long as its display does not create a "substantial disruption or material interference with school activities." (Mov.'s App'x at 23-24, revised policy JICA; *id*. at 27-28, ¶ 7.)

## PLAINTIFF'S CLAIMS FOR RELIEF

Plaintiff asserts five claims for relief.

First, he asserts a Section 1983 damages claim against two School District employees – Dr. Wendy Birhanzel and Dr. Mike Claudio – and three employees of Vanguard – Renee Henslee, Jeff Yocum, and Beth Danjuma. (ECF 43 ¶¶ 162-91.)

Next, he asserts a Section 1983 damages claim against two entities; the School District and Vanguard. (ECF 43 ¶¶ 192-96.)

Plaintiff's third claim seeks injunctive and declaratory relief against the School District and Vanguard.[4] Specifically, Plaintiff seeks a declaration that the District

---

[4]  Plaintiff also asserts this claim against the Individual Defendants in their "official capacities." Official capacity claims are merely an alternative form of pleading a claim against a public entity. *Hafer v. Melo*, 502 U.S. 21, 27 (1991). Since the entities are

and Vanguard violated "Plaintiff's First Amendment rights as set forth in the First Claim for Relief and Second Claim for Relief." (ECF 43 ¶¶ 198; 204.)

Plaintiff's fourth claim seeks injunctive and declaratory relief against the School District and Vanguard, seeking a declaration that the alleged prohibition against clothing with representations of weapons is overbroad, in violation of the First Amendment.

Finally, Plaintiff asserts a damages claim against the individual and entity defendants asserting that they retaliated against him for exercising his First Amendment rights by not protecting him from mistreatment inflicted on him by fellow students and Vanguard teachers. (ECF 43 ¶¶ 145-49; 226-32; 239.) Plaintiff also seeks injunctive and declaratory relief for this claim. (ECF 43, ¶¶ 233-36.)

## ARGUMENT

## I.    Plaintiff's second and fifth claims for relief fail to state a claim for relief against the School District.

Governmental entities cannot be held vicariously liable for § 1983 claims caused by another entity's or individual's conduct. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978). Instead, the constitutional harm must be inflicted by the entity *itself*. *Id*. at 692-94. A plaintiff must show that he or she suffered constitutional harm and that the harm was caused by the entity's official policy or custom. *Schneider*

---

named as defendants, the official capacity claims are duplicative of existing claims and should be dismissed. *See, e.g., Doe v. Douglas Cty. Sch. Dist. RE-1*, 775 F. Supp. 1414, 1416-17 (D. Colo. 1991); *French v. City of Cortez*, 361 F. Supp. 3d 1011, 1042 (D. Colo. 2019.

*v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770-71 (10th Cir. 2013).

To establish that the constitutional harm was inflicted by an official custom or policy, a plaintiff must point to: (1) a formal regulation or policy that is unconstitutional; (2) an informal, but unconstitutional, custom that is so widespread that it amounts to the force of law; (3) an unconstitutional decision of an employee with final policymaking authority for the conduct in question; (4) a final policymaker's ratification of their subordinate's unconstitutional decisions and the illegal basis for them; or (5) a failure to adequately train or supervise employees. *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188-89 (10th Cir. 2010).

A.   J.R.'s Second Claim for Relief.

J.R.'s second claim for relief asserts that his constitutional injuries arose from: (1) the operation of District Policy JICA; (2) a decision of a School District employee – here, Dr. Birhanzel and Dr. Claudio – with final policymaking authority, as well as (3) an alleged subsequent ratification of Vanguard's actions. (ECF 43 ¶¶ 27-35; 40-41; 54; 86; 99-101.) Because Plaintiff fundamentally misunderstands the nature of the relationship between Vanguard, a charter school, and the School District, his *Monell* claim fails.

As originally conceived, a charter school was "a public school which is part of the school district in which it is located and shall be accountable to the local board of education for purposes of ensuring compliance with applicable laws." S.B. 93-183 (1),

1993 Colo. Sess. Laws 1055, codified at C.R.S. § 22-30.5-104(2) (1994). The General Assembly has since fundamentally changed the nature of the relationship between charter schools and school districts. Colorado law <u>now</u> defines a charter school as:

> a public school of the school district that approves its charter application and enters into a charter contract with the charter school. In accordance with the requirement of section 15 of article IX of the state constitution, the charter school shall be subject to accreditation by the school district's local board of education pursuant to the school district's policy for accrediting the public schools of the school district adopted pursuant to section 22-11-307 and section 22-32-109 (1)(mm).

C.R.S. § 22-30.5-104(2)(b) (2023). In short, charter schools are no longer accountable to local boards of education for the purpose of ensuring compliance with applicable laws.

The relationship between a charter school and its authorizing school district is contractual. C.R.S. § 22-30.5-103(2) (2023). Vanguard, a non-profit corporation, is a distinct legal entity from the School District, which is a political subdivision of the State. (Mov.'s App'x at 1, Preamble; 8-9, § 10.1(a).) The school is governed by its own Board pursuant to the corporation's bylaws and articles of incorporation. (*Id.* at 9; § 10.1(c)-(d).) It is solely responsible for its personnel. (*Id.* at § 10.3(b)(3); *see also* C.R.S. § 22-30.5-104(7)(a).) It even has, in essence, its own superintendent. *See* C.R.S. § 22-30.5-104.9(2)(c). Vanguard employees are not School District employees, and the School District has no responsibility for Vanguard employees. (*Id.*; *id.*, p. 9, § 10.2; *see also* 1 CCR 301-35, 2217-R-3.01 (listing automatic waivers provided to charter schools concerning personnel upon charter school entering a contract with its authorizer).)

Vanguard also has "the power and authority to *independently exercise*" the operation of the charter school in accordance with all applicable School District policies "unless a specific waiver is obtained." (*Id.* at 9-10, § 10.3(b)(8) (emphasis added).) Disputes between a charter school and school district regarding a provision of the charter contract must be resolved pursuant to a statutory process that, unless agreed otherwise, is resolved by the Colorado State Board of Education whose decision is final and not subject to appeal. C.R.S. § 22-30.5-107.5.

Vanguard received a waiver exempting it from complying with District Policy JICA, the District's dress code. (*Id.* at 18-19, Waivers; *see also* C.R.S. § 22-30.5-104(6)(a) (providing statutory authority for school districts to contractually waive school district policies "without seeking approval of the state board").) Thus, Vanguard had independent authority to develop its own dress code policies, and the School District had no authority to impose its dress code on Vanguard. (*Id.* at 2; § 3.2.)

Plaintiff concedes that Vanguard was exempt from complying with Policy JICA. (ECF 43 ¶ 42.) Nonetheless, he attempts to erase this fact with mere adjectives, referring to Vanguard's exemption as "nominal" or "illusory." (*Id.*, ¶¶ 42-43.) Plaintiff's adjectives cannot, and do not, supersede Colorado law. There is no allegation that the School District ever demanded that Vanguard comply with Policy JICA; notwithstanding Vanguard's contractual right to disregard Policy JICA, a demand for which Vanguard could have sought protection. C.R.S. §§ 22-30.5-107.5;

22-30.5-108 (2023). Pursuant to state education law and the law of contract, the School District had no legal authority to insist that Vanguard students comply with the School District's dress code any more than the *Nebraska* State Board of Education had authority to insist that Vanguard comply with its dress code policy. Thus, to the extent that Plaintiff contends that Vanguard was acting consistent with a District policy, the final authority to decide to do so rested with Vanguard, not the District.

Even if Vanguard administrators sought the advice of Wendy Birhanzel or Mike Claudio (or the Nebraska State Board of Education), the decision to follow whatever advice was provided rested with Vanguard, not the School District (or the Nebraska State Board of Education). *See Cooper v. Dillon*, 403 F.3d 1208, 1222–23 (11th Cir. 2005) (municipality liable for discretionary decision to enforce an unconstitutional state statute against plaintiff); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) *cert. denied*, 510 U.S. 1177 (1994) (municipality's decision to implement an unconstitutional policy was a deliberate choice among various alternatives); *Vives v. City of New York*, 524 F.3d 346, 353 (2d Cir. 2008) (municipality liable for its choice to enforce a discretionary state statute). As the Sixth Circuit explained in a case in which a prisoner—housed in a county facility contractually administered and operated by a city—attempted to hold the county liable for the city's operation of the facility:

> The duty to manage and operate [its] facility belongs to the City and the custom or policy *it chooses to implement* does not become that of the County because the City has *separate statutory authority* to house prisoners. Therefore, any constitutional violations of the plaintiffs'

rights were the result of City, not County, policy.

*Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885,  888 (6th Cir. 1993) (emphasis added).

In the end, the District had no authority to impose its JICA policy on Vanguard. Even accepting the amended complaint's allegation that Vanguard acted in a manner consistent with the District's policy, Vanguard's decision to do so was a discretionary policy choice of Vanguard that the District was powerless to affect. Vanguard, not the District, exercised final policymaking authority over J.R. and all of its charter school students.

Finally, given that the School District had no power to impose its dress code on Vanguard and did not and could not exercise disciplinary authority over J.R., the ratification doctrine invoked by Plaintiff, which arises only when a public entity's final policymaker ratifies a subordinate's conduct after the fact, is inapplicable for the simple reason that Vanguard is not subordinate to the District. *Bryson,* 627 F.3d at 788. Therefore, there was nothing subject to the School District's review and approval. *Id.*

J.R.'s second claim for relief against the School District must be dismissed for failure to state a claim.

B.       J.R.'s Fifth Claim for Relief.

J.R.'s fifth claim for relief alleging that the School District retaliated against him by failing to prevent Vanguard classmates and staff members from mistreating

him also fails to state a claim for relief.  To state a Section 1983 failure to intervene claim, J.R. must plausibly allege that each defendant: (1) observed or had reason to know that a constitutional violation by another occurred and (2) had a realistic opportunity to intervene. *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015).

Even assuming that school officials have a constitutional duty to protect students from one another, a duty that is not recognized in this Circuit,[5] Vanguard, not the School District, was solely responsible for the operations of the Vanguard School including the supervision and discipline of its students and staff. As such, there was no plausible, realistic opportunity for the School District to intervene, much less any School District policy or custom that was the moving force behind such claim. *Jones,* 809 F.3d at 576.

J.R.'s fifth claim for relief against the District must be dismissed for failure to state a claim.

## II.  Plaintiff's first and fifth claims for relief fail to state a claim for relief against Dr. Birhanzel and Dr. Claudio.

### A.   J.R.'s First Claim for Relief.

The Individual Defendants are entitled to qualified immunity, and J.R.'s Section 1983 claim against them should be dismissed. When a defendant raises the

---

[5] *Castaldo v. Stone*, 192 F. Supp. 2d 1124, 1153 (D. Colo. 2001) (citing *Maldonado v. Josey*, 975 F.2d 727, 732 (10th Cir. 1992)); *see also Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) (stating that the First Amendment protections are implicated only when the government, not a private entity or individual, prohibits speech).

defense of qualified immunity, the defense creates a "presumption of immunity." *Reavis v. Frost*, 967 F.3d 978, 992 (10th Cir. 2020). Plaintiff then shoulders the "heavy" burden to prove the defendants violated a clearly established constitutional right. *Neal v. Lewis*, 414 F.3d 1244, 1247 (10th Cir. 2005). The defense "protects all but the plainly incompetent or those who knowingly violate the law." *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018). To overcome the presumption of immunity, the plaintiff must sufficiently allege that (1) the defendant's actions violated a federal constitutional or statutory right, and (2) that right was clearly established at the time of the defendant's conduct. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted).

Here, J.R.'s individual claims for relief against Dr. Birhanzel and Dr. Claudio are predicated on Section 1983's supervisory liability doctrine. (ECF 43 ¶¶ 16-17; 42.) J.R.'s claims against the Individual Defendants fail for precisely the same reason as his claims against the School District. If the School District did not have the statutory or contractual authority to require Vanguard to act in a manner consistent with the District's dress code, Policy JICA, the School District's employees certainly did not exercise supervisory authority over Vanguard and its employees, a prerequisite for any Section 1983 supervisory liability claim against them.[6] *Serna v. Colorado Dep't*

---

[6] To the extent J.R. argues that he has made non-supervisory Section 1983 claims against Dr. Birhanzel and Dr. Claudio, they are entitled to qualified immunity based on lack of personal participation. For the same reasons supervisory liability cannot attach, non-supervisory liability cannot attach because J.R. cannot plausibly allege that Dr. Birhanzel and Dr. Claudio caused the deprivation of his First Amendment

*of Corr.*, 455 F.3d 1146, 1151-52 (10th Cir. 2006) (requiring proof that the supervisor's subordinates violated the constitution prior to showing the supervisor's "affirmative link" to the subordinate's violation); *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (same); *see, e.g.*, *Morris v. State Bar of California*, 2010 WL 2353528, at *13 (E.D. Cal. June 9, 2010) (dismissing supervisory liability claims because defendant was not a supervisor); *Evatt v. Cook*, 2020 WL 8839682, at *6 (D.S.C. Nov. 12, 2020), *report and recommendation adopted*, 2021 WL 965050 (D.S.C. Mar. 15, 2021) (same); *see also* 29 U.S.C. § 152(11) (defining supervisor to include an individual with authority to hire, transfer, discharge, or discipline other employees).

As stated above, the School District's Board of Education relinquished all authority to impose the District's dress code on Vanguard. Again, even if Vanguard administrators sought the guidance of Dr. Birhanzel and Dr. Claudio or Nebraska school administrators for dealing with J.R.'s patches, Vanguard retained the authority to act or not act on that advice. Bad, but non-binding, advice might amount to negligence, but supervisory liability for acting on the advice rests with the person or entity who is authorized to order a subordinate to act or refrain from acting, not a state actor who has no authority to impose his or her will on the constitutional tortfeasor.

---

rights. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006). Neither Dr. Birhanzel nor Dr. Claudio had any legal authority to direct, control, or participate in Vanguard and/or its employees' decisions affecting J.R., a charter school student.

In any event, Dr. Birhanzel and Dr. Claudio are further shielded from J.R.'s supervisory claims for relief against them because it was not clearly established that the supervisory liability doctrine applies in the context of a non-subordinate's conduct, *i.e.*, administrators of one entity with no authority to control the actions of a separate entity's employees. In the context of a supervisory liability claim, Plaintiff must show that as of August 28, 2023, "clearly established law … would … have put a reasonable official in [Defendants'] position on notice that [his or her] supervisory conduct would" violate J.R.'s First Amendment rights. *Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015) (emphasis added). Because Plaintiff cannot demonstrate that it was clearly established that supervisory liability applies under these circumstances, Dr. Birhanzel and Dr. Claudio are entitled to qualified immunity.

B.      J.R.'s Fifth Claim for Relief.

J.R.'s claim against Dr. Birhanzel and Dr. Claudio for failing to protect him from mistreatment inflicted by classmates and staff members fails for the same reason as his claim against the School District; neither Dr. Birhanzel nor Dr. Claudio have the authority to insert themselves into the operation of the Vanguard School including the supervision of the school and its staff, and, therefore, they could not have had a realistic opportunity intervene to stop those retaliatory acts. *See supra* pp. 14-15. And even if they had such authority, Plaintiff fails to plausibly allege that either Dr. Birhanzel or Dr. Claudio even knew of the retaliatory acts by his Vanguard classmates or staff. *See, e.g., Estate of Strong v. City of Northglenn, Colorado*, 2018

18

WL 1640251, at *4 (D. Colo. Apr. 5, 2018) (dismissing failure to intervene claim at Rule 12 stage when plaintiff failed to plausibly allege same).

### III.   As a Vanguard student, Plaintiff does not have standing to challenge the District's dress code, and his third and fourth claims for relief should be dismissed.

J.R.'s third and fourth claims for relief seek injunctive and declaratory relief against the School District, specifically, that the School District's dress code, Policy JICA, should be enjoined and/or declared unlawful. (ECF 43 ¶¶ 197-225.) If Vanguard had decided to adopt the School District's Policy JICA as its own, J.R. may challenge the Vanguard policy on constitutional grounds, but he cannot challenge an identical policy adopted by the School District that does not have the authority to impose its dress code policy on Vanguard because he simply has no standing to do so. *Bronson v. Swensen*, 500 F.3d 1099, 1110-11 (10th Cir. 2007) (stating that the causation and redressability elements of standing both require that the named defendants possess the authority to enforce the challenged provision on plaintiff); *see supra* pp. 10-14. Thus, just as J.R. does not have a claim for damages against the School District, he does not have standing to assert a claim for injunctive or declaratory relief against the School District any more than he would have standing to assert a claim for injunctive and declaratory relief against an adjacent school district that had a policy identical to Policy JICA.  The adjacent school district had no more authority to impose its policy on J.R. than the Harrison School District did.

In the end, to the extent J.R. has cognizable equitable claims for relief, based

on Vanguard's dress code policy and subsequent disciplinary actions imposed on him in August of 2023, they are against Vanguard, not the School District. If so, his claims against Vanguard and/or Vanguard employees will resolve the constitutionality of actions taken by his school administrators.

However, neither the School District nor its employees are proper parties to that challenge because they simply had no authority to enforce its dress code on Vanguard.

## IV.   In the alternative, to the extent J.R. has standing to challenge District Policy JICA, his third and fourth claims for relief are mooted by Policy JICA's subsequent revision.

In his Amended Complaint, J.R. acknowledges that the School District has revised Policy JICA removing the prohibition against the display of weapons. (ECF 43 ¶¶ 156; 225; Mov.'s App'x at 23-24, revised policy JICA.)  Nonetheless, J.R. seeks a declaration that the School District violated his First Amendment rights and an injunction prohibiting its enforcement.

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). To avoid being rendered moot, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). Under the mootness doctrine, the "crucial question is whether granting a present determination of the issues offered … will have some effect in the real world." *Id.* at 1246. This inquiry involves both

constitutional and prudential concerns. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1121 (10th Cir. 2010).

To avoid becoming moot in the constitutional sense, a case or controversy presented to the court must be definite, concrete, and amenable to specific relief. *Jordan v. Sosa*, 654 F.3d 1012, 1023. Even if claims are not constitutionally moot, a court may dismiss claims seeking injunctive or declaratory relief on a discretionary basis pursuant to the prudential mootness doctrine if the court decides that events post-dating the injury have eliminated the need for court intervention such that it should withhold relief that it has the power to grant. *Id*; *Rio Grande Silvery Minnow*, 601 F.3d at 1121.

Given that the School District has amended its dress code policy and eliminated its prohibition on the display of weapons, a policy that J.R. does not challenge, there is no longer a live controversy with respect to the policy that was in place at the time Vanguard decided to implement it and take action with respect to J.R.

A.    J.R.'s Third Claim for Relief.

Assuming *arguendo* that he has standing to challenge School District Policy JICA, J.R.'s third claim for relief seeking an injunction and declaratory judgment became moot when the School District amended its policy. As explained above, the School District revised policy JICA and removed the reference to weapons ban. *See supra* pp. 7-8 (citing Mov.'s App'x at 23-30, revised policy JICA, Birhanzel Affidavit).

And the School District has no plan to reinstitute a dress code policy banning any weapon reference or interpreting same to ban the Gadsden patch without a demonstration that either could reasonably cause a substantial disruption of or material interference with school activities. (*Id.*, (citing Mov.'s App'x at 27-28, ¶¶ 6-7, Birhanzel Affidavit).)

In this Circuit, it is well established that, when the government changes its policies providing a plaintiff with the remedial promise he sought, that challenges to the former governmental action become moot. *See, e.g., Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012) (Gorsuch, J.); *Building and Construction Dep't. v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1491-92 (10th Cir. 1993). As any equitable order regarding the School District's prior JICA policy would have no real-world effect, the Court should exercise its discretion and dismiss Plaintiff's third claim for relief as prudentially moot.

To the extent Plaintiff argues that the two recognized mootness exceptions apply, those arguments will fail. The "capable of repetition but evading review" exception only applies in exceptional circumstances when: "(1) the duration of the challenged conduct is too short to be fully litigated prior to its expiration, and (2) there is a reasonable expectation that the complaining party will be subjected to the same conduct again." *Wyoming v. U.S. Dep't of Agr.*, 414 F.3d 1207, 1212 (10th Cir. 2005). This exception does not apply here because the challenged conduct, assuming *arguendo* that it would recur, does not evade review. On the contrary, the School

District Defendants move to dismiss Plaintiff's claims against them, but the challenged conduct, *i.e.*, whether the Vanguard Defendants' decision to implement the District's former dress code policy violated J.R.'s constitutional rights, remains pending before the Court via his Section 1983 claims. *See, e.g., Fleming v. Gutierrez*, 785 F.3d 442, 445-46 (10th Cir. 2015) (finding no exception to mootness for interlocutory appeal of district court order granting preliminary injunction where underlying issues did not evade review because same legal questions remained pending before district court).

Regarding the voluntary cessation exception, this mootness exception also does not apply. A defendant's voluntary cessation of challenged conduct moots a claim when: (1) there is no reasonable expectation that the allegedly wrongful conduct will recur and (2) interim relief or events have completely eradicated the effects of the alleged violation. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1115 (10th Cir. 2010).

Generally, the party asserting mootness in light of its voluntary cessation bears a "heavy burden" that the challenged conduct cannot reasonably be expected to recur. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Despite this burden, "[i]n practice, however, Laidlaw's heavy burden [analysis] frequently has not prevented *government* officials from discontinuing challenged practices and mooting a case." *Rio Grande*, 601 F.3d at 1116; n.15 (emphasis added). Indeed, the "withdrawal or alteration of administrative policies

can moot an attack on those policies" because a case "ceases to be a live controversy if the recurrence of the challenged conduct is only a speculative contingency." *Id* at 1117.

Here, there is no reasonable expectation that J.R. will be prohibited from wearing the Gadsden or weapons patches in the future due to District Policy JICA. To begin, pursuant to the current version of JICA, none of the patches at issue violate School District policy. (Mov.'s App'x at 23-24 current JICA policy; 27-28, ¶¶ 6-7, Birhanzel Affidavit.) Second, Plaintiff will be unable to point to any evidence that the School District amended JICA temporarily with the intent to reinstate the reference to weapons ban or prohibit the Gadsden patch in the future. (*Id*. at 25-30, ¶¶ 6-7.) Instead, the School District took the concrete step of amending its dress code and removing the provision at issue. Third, to the extent Plaintiff argues that the Vanguard Defendants may reimpose a ban the Gadsden patch sometime in the future based on future student and/or parent complaints (ECF 43 ¶¶ 139; 200), that speculative contingency is insufficient to warrant the application of the voluntary cessation exception against the School District. *Rio Grande*, 601 F.3d at 1117.

The second element for voluntary cessation mooting a claim, *i.e.*, subsequent events have completely eradicated the effects of the alleged constitutional violation due, is also met here because: (1) the School District revised JICA to remove the weapons display ban which is the basis of J.R.'s Section 1983 lawsuit ; (2) subsequent statements and actions by Vanguard Defendants permitted J.R. to wear the Gadsden

patch; and (3) J.R. admitted that he continues to wear *all* patches at issue ever since without any disciplinary repercussion.[7]

As such, the Court should dismiss Plaintiff's third claim for relief as prudentially moot.

B.   <u>J.R.'s Fourth Claim for Relief</u>.

J.R.'s overbreadth challenge to the School District's written policy can only be maintained when "its effect might be salutary." *Massachusetts v. Oakes*, 491 U.S. 576, 582 (1989). However, whenever a statute or policy at issue is subsequently amended or repealed, Supreme Court precedent dictates that an overbreadth challenge is rendered moot. *Id.* at 583-84; *see also Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1303, 1312 (8th Cir. 1997) (affirming dismissal of appellant's overbreadth claim because school district subsequently amended its gang activities policy). Because JICA's weapons provision which is the basis of the Fourth Claim was amended, the overbreadth challenge against the School District is moot.

In sum, to the extent J.R. has standing to assert equitable claims against the District for its dress code policy, J.R.'s third and fourth claims for relief against the District were rendered moot by its subsequent revision, and they must be dismissed for lack of subject matter jurisdiction.

---

[7] To the extent J.R. argues that his Vanguard disciplinary record was never corrected, the School District has no authority to discipline or correct a Vanguard student's disciplinary records or intervene in Vanguard's operations.  (ECF 43 ¶ 154; *see supra* pp. 4-5; 10-14.)  As such, there is simply no equitable order directed at the School District which could provide the relief he seeks.

Respectfully submitted this 1st day of February 2024.

> _s/David M. Strachan_
> Gwyneth Whalen
> David M. Strachan
> CAPLAN AND EARNEST LLC
> 3107 Iris Avenue, Suite 100
> Boulder, Colorado 80301
> 303-443-8010
> gwhalen@celaw.com
> dstrachan@celaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

James Kerwin
William E. Trachman
Mountain States Legal Foundation
jkerwin@mslegal.org
wtrachman@mslegal.org
Attorneys for Plaintiff

John C. Eastman
Anthony T. Caso
Constitutional Counsel Group
jeastman@ccg1776.com
atcaso@ccg1776.com
Attorneys for Plaintiff

Alexander H. Haberbush
Lex Rex Institute
ahaberbush@lexrex.org
Attorney for Plaintiff

Scott A. Neckers
Lindsey W. Jay
Steven W. Boatright
Caroline F. Bordelon
Overturf McGath & Hull, P.C.
san@omhlaw.com
lwj@omhlaw.com
cfb@omhlaw.com
swb@omhlaw.com
Attorneys for Vanguard Defendants

Peter C. Middleton
John F. Peters
Hall & Evans, L.L.C.
1001 17th Street, Suite 300
Denver, CO 80202
middletonp@hallevans.com
petersj@hallevans.com
Attorneys for Beth Danjuma

*s/Shelley McKinstry*
Shelley McKinstry, Paralegal